IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DE WITT LAMAR LONG, #A1024631, | ) ) ) | CIV. NO. 16-00372 DKW/RLP |
| Plaintiff, | ) ) ) ) | ORDER DISMISSING COMPLAINT IN PART PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b) |
| vs. | ) ) | |
| JOHN DOES 1-3, NOLAN P. ESPINDA, MICHAEL HOFFMAN, | ) ) ) ) | |
| Defendants. _____ | ) ) ) | |

## ORDER DISMISSING COMPLAINT IN PART PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

Before the court is pro se Plaintiff De Witt Lamar Long's prisoner civil rights Complaint.  Compl., Doc. No. 1.  Long is incarcerated at the Halawa Correctional Facility ("HCF"), but challenges events that occurred at the Oahu Community Correctional Center ("OCCC") between July 3-10, 2014.  Long names OCCC Correctional Officers ("CO") John Does 1-3, the Hawaii Department of Public Safety ("DPS") Director Nolan P. Espinda, and OCCC Warden Michael Hoffman as Defendants.  Long alleges Defendants violated his rights under the First and Fourteenth Amendments to the United States Constitution.

For the following reasons, the Complaint is DISMISSED in part with instructions to identify CO John Does 1-3 and leave granted to amend those claims that are dismissed without prejudice.

## I. BACKGROUND

Long is a practicing Muslim.  In 2014, OCCC and/or DPS prison officials authorized Long to receive his morning meals before sunrise during the month of Ramadan, which is an Islamic religious holiday during which Muslims are encouraged to fast between sunrise and sundown.  On July 3, 2014, Long says he awoke before sunrise and requested his morning meal.  Compl., Doc. No. 1, PageID #7 (Count I).  Long alleges CO John Doe 1 told him he would receive his morning meal at 6:30 a.m., when the next shift arrived.  Long explained that, if he was not given his meal before the sun rose, he would be unable to eat until after sunset, nearly twenty-four hours after his last meal.  CO John Doe 1 did not provide Long with a morning meal, and Long submitted an informal grievance.

On July 5, 2014, Long again requested an early morning meal before sunrise.  *Id.*, PageID #8 (Count II).  Long says he explained to CO John Doe 2 that he was a practicing Muslim and that his name was on a list circulated throughout OCCC permitting early distribution of meals to those inmates observing the Ramadan fast.  Long alleges CO John Doe 2 nonetheless refused to provide him an

early meal, stating that he would receive a meal when the next shift came on duty.

Long went another twenty-four hours before being fed.

On July 9, 2014, Long alleges that CO John Doe 3 refused to provide him an early morning meal. *Id.*, PageID #9 (Count III). Long states that John Does 1-3 refused to identify themselves. He alleges that CO John Does 1-3 violated the First Amendment when they refused to accommodate his request for an early meal during Ramadan.

On or about July 10, 2014, Long was transferred to the Federal Detention Center-Honolulu ("FDC-Honolulu). *Id.*, PageID #10-11 (Counts IV & V).[1] Long alleges he was transferred because he filed grievances regarding CO John Does 1-3's alleged actions. Long states that he was required to sign up for Ramadan again at FDC-Honolulu, but he alleges no claims against any FDC-Honolulu prison officials or regarding his incarceration there. Long alleges, however, that the OCCC grievance specialist informed him that his transfer to FDC-Honolulu rendered his grievances at OCCC against CO John Does 1-3 moot. Long alleges this unidentified grievance specialist told him he could no longer pursue his

---

[1]Although Long does not identify his fourth and fifth causes of action as Counts IV and V, the court will refer to them as such for clarity.

grievances while he was confined at FDC-Honolulu.  Long therefore alleges his

transfer to FDC-Honolulu was a ruse to impede the grievance procedure.

Long seeks compensatory damages and prospective injunctive relief in the

form of training for all OCCC staff regarding how to properly accommodate

Muslim inmates during Ramadan.

## II.  SCREENING

The court must screen all civil actions brought by prisoners proceeding in

forma pauperis or seeking redress from a government entity, officer, or employee.

28 U.S.C. §§ 1915(e)(2) & 1915A(a).  Complaints or claims that are frivolous,

malicious, fail to state a claim, or seek relief from a defendant who is immune from

such relief must be dismissed.  28 U.S.C. §§ 1915(e)(2) & 1915A(b); 42 U.S.C.

§ 1997e(c)(1).

A complaint that lacks a cognizable legal theory or alleges insufficient facts

under a cognizable legal theory fails to state a claim.  *Balistreri v. Pacifica Police

Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim, a pleading must contain

a "short and plain statement of the claim showing that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2).  This does not require detailed factual allegations,

but "it demands more than an unadorned, the-defendant-unlawfully- harmed-me

accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[A] complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To state a plausible claim, a plaintiff must plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 679-80.  Second, the court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681.  If the allegations state a plausible claim for relief, the claim may proceed.  *Id.* at 680.  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (internal quotation marks omitted).  The court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'"  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

A court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

"[C]onclusory allegations of law and unwarranted inferences are insufficient."

*Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at

678.

Leave to amend should be granted if it appears the plaintiff can correct the

defects in the complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en

banc).  If it is clear the complaint cannot be saved by amendment, dismissal

without leave to amend is appropriate. *Sylvia Landfield Trust v. City of L.A.*, 729

F.3d 1189, 1196 (9th Cir. 2013).

## III.  <u>DISCUSSION</u>

To state a civil rights claim under 42 U.S.C. § 1983, a plaintiff "must allege

a violation of a right secured by the Constitution and laws of the United States, and

must show that the alleged deprivation was committed by a person acting under

color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Additionally, a plaintiff must allege that he suffered a specific injury as a

result of the conduct of a particular defendant, and he must allege an affirmative

link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423

U.S. 362, 371-72, 377 (1976).

## A.  Immunities and Prospective Injunctive Relief

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Defendants named in their official capacities are subject only to suit "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law" under § 1983.  *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007) (citation omitted); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70-71 (1989)  ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Ex parte Young*, 209 U.S. 123 (1908).

Because Long is no longer housed at OCCC, which generally houses pretrial detainees or detainees with a short amount of time remaining on their sentences,[2] and because there is no indication or information that Long might return to OCCC, his claims for injunctive relief regarding training at OCCC are moot.  *See Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (stating prisoner's claims for injunctive relief generally become moot upon transfer) (citing *Johnson v. Moore*,

_____

[2] "The Oahu Community Correctional Center (OCCC) . . . houses pre-trial detainees . . . [and] provides reintegration programming for male sentenced felons."  *See* http://dps.hawaii.gov/blog/2012/09/18/oahu-community-correctional-center.

948 F.2d 517, 519 (9th Cir. 1991) (*per curiam*) (holding claims for injunctive relief

"relating to [a prison's] policies are moot" when the prisoner has been moved and

"he has demonstrated no reasonable expectation of returning to [the prison]"));

*Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (holding that inmate's

transfer to another prison while his claims are pending generally moots claims for

injunctive relief).

Long's claims for injunctive relief regarding training at OCCC and his

claims for damages against all Defendants in their official capacities are

DISMISSED.

## B.     First Amendment Claims

> Congress shall make no law respecting an establishment of religion, or
> prohibiting the free exercise thereof; or abridging the freedom of
> speech, or of the press; or the right of the people peaceably to
> assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I.

### 1.     *Defendants CO John Does 1-3*

To state a First Amendment, free-exercise-of-religion claim, a prisoner must

allege that a defendant substantially burdened the practice of his religion by

preventing him from engaging in a sincerely held religious belief, and that the

defendant did so without any justification reasonably related to legitimate

penological interests.  *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

Thus, a prisoner must identify the sincerely held religious belief, the defendant who substantially burdened the practice of his religion, and the actions that particular defendant took to substantially burden the practice of his religion. *Jones v. Arizona Dep't of Corr.*, 2016 WL 2606990, at *7 (D. Ariz. May 6, 2016).  Long states a cognizable claim against CO John Does 1-3, who were on duty on July 3, 5, and 9, 2014, at or about 5:00-5:30 a.m. in Long's housing unit.  These claims shall go forward after Long identifies CO John Does 1-3 sufficiently to be served.

The court cannot direct the U.S. Marshal to serve Defendants CO John Does 1-3, however.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642-43 (9th Cir. 1980) (noting that "doe" pleadings are generally disfavored in the federal courts due to the nearly impossible task of serving unidentified defendants).  Unknown defendants may be included in a complaint, however, when their identities are unknown prior to the filing of the complaint and they may later be identified through discovery.  *Id.*; *see also  Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (holding plaintiff should be given an opportunity to identify unknown defendants, unless it is clear that discovery would not uncover their identities, or that the complaint will be dismissed on other grounds) (citing *Gillespie*, 629 F.2d at 642); *cf. Cobbler Nevada, LLC v. Gonzales*, 2016 WL 3392368, at *3 (D. Or. June 8, 2016) (granting plaintiff's motion to issue a subpoena to a non-party

9

pursuant to Fed. R. Civ. P. 45, to enable plaintiff to identify the only defendant);

*Peralta v. Doe*, 2005 WL 357358, at *2 (W.D.N.Y. Jan. 24, 2005) (permitting

plaintiff time to investigate and then amend his complaint to name a defendant for

service and discovery).

Long is GRANTED forty-five days as calculated from the date of this Order,

to submit a motion to subpoena a non-party to respond to interrogatories designed

to identify CO John Does 1-3.  The motion shall explain the steps Long has taken

to identify these Defendants since 2014 and include the proposed interrogatories.

Long is NOTIFIED that he is ultimately responsible for identifying CO John Does

1-3, seeking substitution of their actual identities, and requesting the court to issue

a summons and direct service upon them.

Long is cautioned that "authorities clearly support the proposition that John

Doe defendants must be identified and served within 90 days of the

commencement of the action," and they may be dismissed for failure to effect

service after that time, unless he can show good cause for his failure to timely

serve them.[3]  *Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (N.D.

Ill.1995) (citing *Gillespie*, 629 F.2d at 643); Fed. R. Civ. P. 4(m) & 15(c)(1).

### 2.     *Retaliation*

Long alleges he was transferred to FDC-Honolulu because he filed

grievances against CO John Does 1-3.  *See* Compl., Doc. No. 1, PageID #10, Count

I.  Inmates have a First Amendment right to file grievances against prison officials

without retaliation.  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

"Within the prison context, a viable claim of First Amendment retaliation entails

five basic elements: (1) An assertion that a state actor took some adverse action

against an inmate (2) because of (3) that prisoner's protected conduct, and that

such action (4) chilled the inmate's exercise of his First Amendment rights, and (5)

the action did not reasonably advance a legitimate correctional goal."  *Rhodes v.

Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Liberally construed, Long's fourth and fifth causes of action in Counts IV

and V may state a cognizable retaliation claim against the unnamed OCCC

---

[3]Section § 1915A's required screening procedures suspend service and have the practical
effect of causing delay in service that is not attributable to the indigent litigant.  Additionally, if a
court dismisses the complaint with leave to amend, the defendants will not receive formal notice
of the lawsuit until the court requests waiver of service, or serves them with the summons and
amended complaint.  *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(2).  Thus, service is generally
not required in prisoner pro se cases until 90 days after the court issues an order finding the
complaint states a claim and directing the U.S. Marshal to effect service.  *See e.g.*, *Warren v.
Ruffcorn*, 2001 WL 34043449, at *3 (D. Or. Sept. 18, 2001).

grievance specialist who allegedly told him his grievances became moot upon his

transfer to FDC-Honolulu, and against whomever told him he may go to the "hole"

if he resisted the transfer.  Long fails to allege *any* facts tying Director Espinda or

Warden Hoffman to these claims, however.  Long appears to name them based

solely on their positions as DPS Director and OCCC Warden.  Government

officials may not be held liable for the actions of their subordinates under a theory

of respondeat superior.  *Iqbal*, 556 U.S. at 673.  To state a claim under § 1983,

Long must plead that Espinda and Hoffman violated the Constitution through their

own individual actions.  *Id.* at 673.  In other words, to state a claim for relief under

§ 1983, Long must link Espinda and Hoffman with some affirmative act or

omission that demonstrates a violation of his federal rights.  Long does not even

claim that Espinda or Hoffman were aware of the grievance specialist's statements

or the alleged threats that Long would be confined in the "hole" if he resisted the

transfer.

Rather, Long states that DPS and/or OCCC authorities approved him to

receive early morning meals during Ramadan.  He asserts that his name was on a

list circulated throughout OCCC to notify guards which inmates were approved for

early meal distribution.  He claims that despite this official accommodation to

prisoners observing the Ramadan fast, CO John Does 1-3 denied him early meals

12

in clear contravention of prison policies and directives.  These facts do not support a finding that Director Espinda or Warden Hoffman transferred Long to the FDC-Honolulu within one week of the alleged violations to prevent him from grieving John Does 1-3' s allegedly improper conduct.  Long's retaliation claims, to the extent they are directed at Director Espinda and Warden Hoffman, fail to state a claim and are DISMISSED.

## C.    **Due Process Claims**

To the extent Long alleges Espinda, Hoffman, or any other OCCC prison official violated his right to due process by transferring him to FDC-Honolulu, he fails to state a claim.  It is well-settled that prisoners have no constitutional right to incarceration in a particular institution.  *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  A state may generally confine or transfer a prisoner to any of its institutions, to prisons in another state, or to federal prisons, without offending the Constitution.  *See Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (citing *Meachum*, 427 U.S. at 225) (intrastate prison transfer does not implicate Due Process Clause), and *Olim*, 461 U.S. at 244-48 (interstate prison transfer does not implicate Due Process Clause)).

To the extent Long alleges that Espinda and Hoffman violated due process by denying him the ability to exhaust the OCCC grievance procedure after he

transferred, he fails to state a claim.  There is no federal constitutional right to a

prison administrative appeal or grievance system.  *See Ramirez v. Galaza*, 334 F.3d

850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988);

*Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (prison grievance

procedure is procedural right that does not give rise to protected liberty interest

requiring procedural protections of Due Process Clause); *Smith v. Noonan*, 992

F.2d 987, 989 (9th Cir. 1993).  Prison officials are not liable for a due process

violation for failing to process a grievance or appeal or for failing to find in the

prisoner's favor.[4]  Long's due process claims in Counts IV and V are DISMISSED.

## IV.  LEAVE TO AMEND

Long may file an amended complaint on or before October 14, 2016 that

cures the deficiencies in his claims as noted above.  An amended complaint

generally supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57

(9th Cir. 1967), *overruled in part by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th

Cir. 2012) (en banc).  An amended complaint should stand on its own without

incorporation or reference to a previous pleading.  Defendants not named in the

---

[4]This is not to say that Long's claim that an OCCC grievance specialist informed him that his grievances became moot upon his transfer, and apparently denied him the ability to fully exhaust his claims, are unimportant.  If Long identifies and serves CO John Does 1-3, and if they move for summary judgment for his failure to exhaust his claims against him, *see* 42 U.S.C. § 1997e(a), he may use any evidence he has supporting this claim to defeat such a motion.

caption and claims dismissed without prejudice that are not realleged in an

amended complaint may be deemed voluntarily dismissed.  *See Lacey*, 693 F.3d at

928 (stating that claims dismissed with prejudice need not be repled in an amended

complaint to preserve them for appeal, but claims that are voluntarily dismissed are

considered waived if they are not repled).

## V.  CONCLUSION

(1) Long's claims against CO John Does 1-3 state a claim and shall be

served when he sufficiently identifies these Defendants.

(2) Long is GRANTED **forty-five [45]** days, as calculated from the date of

this Order,  to conduct expedited discovery to identify CO John Does 1-3, as

discussed above.  Failure to do so may result in dismissal of this action for failure

to prosecute.

(3) Long's retaliation and due process claims against Defendants DPS

Director Nolan P. Espinda and OCCC Warden Michael Hoffman are DISMISSED

for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

(4)  Long may file an amended complaint curing the deficiencies noted

above regarding his claims on or before October 14, 2016.

(5)  The Clerk of Court is directed to mail Long a prisoner civil rights

complaint form that may be used to comply with the directions in this Order if

Long chooses to file an amended complaint.

IT IS SO ORDERED.

DATED: July 25, 2016 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

-----------------------------------------------------------------------------------------------------

*Long v. John Does, et al.*; Civil No. 16-00372 DKW-RLP; ORDER DISMISSING
COMPLAINT IN PART PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

*Long v. John Does 1-3*, 1:16-cv-00372 DKW-RLP; scrng 2016 16-372 (st cl. Doe Defs)

16