IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| DE WITT LAMAR LONG,<br><br>                 Plaintiff,<br><br>    vs.<br><br>SGT. A. MAKUA III, a Correctional Officer; KALEONAHE E. WOO, a Correctional Officer; B. ARAKAKI, a Correctional Officer; and DWAYNE K. HANEY, a Correctional Officer,<br><br>                 Defendants. | CIVIL NO. 16-00372 DKW-RLP<br><br>**ORDER GRANTING DEFENDANT ANDREW MAKUA'S MOTION TO DISMISS COUNT I WITH LEAVE TO AMEND** |

## INTRODUCTION

De Witt Lamar Long alleges that several Adult Correctional Officers ("ACOs") violated his First Amendment rights to practice his Muslim faith while incarcerated at Oahu Community Correctional Center ("OCCC") by refusing, on four occasions, to provide him with appropriate meals during his observance of Ramadan. Defendant Andrew Makua moves to dismiss as untimely the single count against him in Long's Second Amended Complaint. Because Long's claim against Makua accrued more than two years prior to the filing of the Complaint and because the continuing violation doctrine does not apply to the discrete acts alleged against the ACOs, Makua's Motion to Dismiss Count I is GRANTED.

Long is permitted leave to file an amended complaint consistent with the terms of this Order.

## BACKGROUND

### I. Plaintiff's Allegations[1]

As a practicing Muslim, Long participates in the holy month of Ramadan, during which time he is required to fast roughly from sunrise to sunset each day. Second Amended Complaint ("SAC") ¶ 11. When he arrived at OCCC, Long requested that his name be placed on a list of inmates who observe Ramadan and on a list of inmates who cannot consume pork. SAC ¶ 12. According to Long, to ensure his ability to participate in Ramadan, each year he sent an inter-unit request to the OCCC chaplain to confirm that his name was on the appropriate Ramadan list. SAC ¶ 13.

Long alleges that ACOs Makua, Kaleonahe E. Woo, B. Arakaki, and Dwayne K. Haney violated his First Amendment rights during both the 2013 and

---

[1] Long, proceeding pro se, filed his initial Prisoner Civil Rights Complaint on June 30, 2016. Dkt. No. 1. Long filed this Complaint while incarcerated at Halawa Correctional Facility ("HCF"). However, at the time of the relevant conduct, he was housed at OCCC. Second Amended Complaint ¶¶ 1, Dkt. No. 28. On July 25, 2016, the Court dismissed the Complaint, in part, with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) (Dkt. No. 5), and, having determined that Long's case was suitable for pro bono representation, referred this matter to the Civil Pro Bono Panel. Dkt. No. 9. While awaiting appointment of pro bono representation, Long filed a First Amended Prisoner Civil Rights Complaint. Dkt. No. 12. The Court appointed counsel on December 7, 2016, under Rule 3(E), Rules for Civil Pro Bono Panel for the District Court for the District of Hawaii. Dkt. No. 17. On April 14, 2017, the Magistrate Judge granted in part and denied in part Long's Motion for Leave to File a Second Amended Complaint (Dkt. No. 27), and, on April 18, 2017, Long filed his Second Amended Complaint against the four ACOs named herein, each in their individual capacities. Dkt. No. 28.

2

2014 Ramadan observances by refusing to provide him with suitable meals during appropriate hours. According to Long, each of the four counts in the SAC form part of a pattern in which the four ACOs intentionally denied him one of the two daily meals that he could eat while observing Ramadan, resulting in Long going without food for twenty-four hour stretches. Long alleges that in 2013, Makua refused his request for an evening meal without pork, as follows—

> On July 15, 2013, during the month of Ramadan, Plaintiff was provided with his dinner meal at approximately 7:00 p.m. The meal contained pork, which Plaintiff could not eat because of his religious beliefs. Plaintiff informed the correctional officer on duty at the time, Sgt. Makua, that he could not eat the meal provided because it contained pork. Sgt. Makua laughed and told Plaintiff that he could take the pork out. Plaintiff explained that taking out the pieces of pork would not make a difference because the meal was cooked with pork in it. Plaintiff asked Sgt. Makua to call the kitchen to request a non-pork meal and explained that he was on the list of prisoners that could not eat pork. Sgt. Makua refused, and told Plaintiff that he either had to eat the meal with pork that had been provided or he would not eat anything. Because Plaintiff's religious beliefs bar him from eating pork, Plaintiff had to wait until the next morning to eat, leaving him without food for approximately twenty-four hours.

SAC ¶ 14. Long alleges no other conduct by Makua or any other ACO during the 2013 Ramadan observance, the first year he was incarcerated at OCCC.

He alleges that, the next year, "a memorandum regarding prisoner observance of Ramadan dated June 23, 2014 was circulated within OCCC [stating that] all individuals participating in Ramadan beginning on June 28, 2014 were to

3

be provided breakfast before sunrise, at 5:00 a.m., and dinner after sunset, at 7:00 p.m." SAC ¶ 15. The June 23, 2014 memorandum listed Long as a Ramadan participant. SAC ¶ 15. On July 3, 2014, at approximately 5:15 a.m., Long knocked on his cell door and asked the correctional officer on duty, ACO Woo, for his morning meal because he had not yet received it. Woo, who had been sleeping, told Long that he would receive his morning meal when the next shift of correctional officers started at 6:30 a.m. SAC ¶ 16. Long explained to Woo that it would be too late for him to eat at 6:30 a.m., and asked Woo to consult the memorandum regarding prisoners participating in Ramadan. According to Long, Woo then repeated that Plaintiff would eat at 6:30 a.m. and went back to sleep. SAC ¶ 16. Long then had to wait until after sunset to eat, approximately twenty-four hours after he had last eaten, as a result of Woo's refusal to make available a morning meal before sunrise. SAC ¶ 17.

On July 5, 2014, Long was again denied his morning meal before sunrise. At approximately 5:00 a.m., when he asked ACO Arakaki, the officer on duty, for his morning meal, Arakaki refused and stated, "with use of explicit language, that nobody cared about Plaintiff's concerns and that Plaintiff would be fed during the next shift." SAC ¶ 19. Although Long attempted to explain that he could not eat that late because of his religious beliefs, Arakaki made no effort to provide any

4

morning meal, and as a result, Long had to wait until after sunset to eat, approximately twenty-four hours after he had last eaten. SAC ¶¶ 19–20.

This same course of events again unfolded on July 9, 2014, when Long was not provided his morning meal before sunrise. Around 5:00 a.m., Long requested his morning meal from ACO Haney, the officer on duty, who refused, despite Long's explanation that he needed to eat before sunrise to comply with his religious beliefs. SAC ¶ 22. As a result of Haney's refusal to provide the morning meal before sunrise, Long, for the third time in a week, had to wait until after sunset to eat, approximately twenty-four hours after he had last eaten. SAC ¶ 23.

Following each of the missed morning meals in July 2014, Long submitted informal grievances the same day he was denied that meal. SAC ¶¶ 18, 21, 24. After participating in informal attempts at resolution, Long filed formal grievances. SAC ¶¶ 18, 21, 24. On July 10, 2014, the correctional officer on duty, ACO Fonseca, told Long that he was being transferred to the Federal Detention Center-Honolulu ("FDC-Honolulu"). Long told Fonseca that he did not want to be transferred because he had pending grievances that he wished to pursue at OCCC. SAC ¶ 25. After placing a telephone call to intake, Fonseca instructed Long that, if he refused the transfer to FDC-Honolulu, he would be placed in administrative segregation. SAC ¶ 25. Long acquiesced and was not allowed to take his personal property, including his legal materials, with him. SAC ¶ 25. Once he arrived at

5

FDC-Honolulu, Long sent a request to a grievance specialist at OCCC, asking for the grievances that he had filed at OCCC to be forwarded to him at FDC-Honolulu, but did not receive any response. SAC ¶ 26. He then sent another request to a grievance specialist at OCCC, and was told that his grievances regarding the denial of meals were moot as a result of his transfer. SAC ¶ 27.

## II.     Makua's Motion To Dismiss Count I

Long's SAC asserts four counts under 42 U.S.C. § 1983, one for each of the four missed meals and against the corresponding ACO who allegedly deprived him of that meal. Count I alleges that Makua burdened the practice of Long's religion by preventing him from engaging in a sincerely held religious practice without any justification reasonably related to legitimate penological interests. SAC ¶¶ 29–30. Long further alleges that Makua knew or should have known that he was violating clearly established First Amendment rights and that Makua's conduct was motivated by malice or involved reckless or callous indifference to his rights. SAC ¶¶ 31–32.

Makua moves to dismiss Count I against him because the acts complained of occurred more than two years before Long filed his Complaint on June 30, 2016. Long argues that all of the claims have been timely brought because, taken as a whole, the Complaint pleads facts demonstrating a continuing violation of his First

Amendment rights that extends and is actionable beyond the two-year limitation period ordinarily applicable to Section 1983 claims.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and

7

plain statement of the claim showing that the pleader is entitled to relief, as required by Rule 8(a)(2). *Id*. at 679.

"A statute-of-limitations defense, if 'apparent from the face of the complaint,' may properly be raised in a motion to dismiss." *Seven Arts Filmed Entm't Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980)); *see also Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) ("When an affirmative defense is obvious on the face of a complaint, . . . a defendant can raise that defense in a motion to dismiss.") (citing *Cedars-Sinai Med. Ctr. v. Shalala*, 177 F.3d 1126, 1128-29 (9th Cir. 1999)). That said, "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995) (citation and quotation marks omitted). In making such a determination, the Court is not "required to accept as true allegations that contradict . . . matters properly subject to judicial notice[.]" *Seven Arts*, 733 F.3d at 1254 (internal quotation marks omitted). In this case, the statute of limitations issues are apparent on the face of the Second Amended Complaint.

**DISCUSSION**

As detailed below, the Court grants Makua's Motion with respect to the untimely allegations occurring more than two years before the filing of the initial Complaint. Because the continuing violation doctrine does not apply to the discrete acts alleged against Makua in 2013, and the other ACOs in 2014, and because Long alleges no systemic violation or concerted action to violate his First Amendment rights, Count I is barred by the statute of limitations. That is, Long's claims, as currently alleged, are based upon discrete acts taken by Makua on July 15, 2013, rather than a series of acts which collectively constitute one unlawful practice during the limitations period. Makua's Motion is therefore granted, but with leave to amend consistent with the instructions below.

**I.    Count I, As Alleged, Is Time-Barred**

   **A.    Statute Of Limitations Legal Framework**

Long's Section 1983 claims are governed by the forum state's statute of limitations for personal injury actions. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In Hawai'i, the statute of limitations is two years. *Beckstrand v. Read*, 680 F. App'x 609, 610 (9th Cir. 2017) (citing Haw. Rev. Stat. § 657-7) ("Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued...."). Although state law determines the length of the limitations period, federal law determines

when a civil rights claim accrues and, hence, when the statute of limitations begins to run. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, accrual occurs when the plaintiff has a complete and present cause of action and may file a suit to obtain relief. *Id.*; *see also Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996) ("Under federal law, 'the limitations period accrues when a party knows or has reason to know of the injury' which is the basis of the cause of action.") (quoting *Golden Gate Hotel Ass'n v. San Francisco*, 18 F.3d 1482, 1486 (9th Cir. 1994)).

The continuing violation theory applies to Section 1983 actions, "allowing a plaintiff to seek relief for events outside of the limitations period." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (citing *Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997), and *Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982)). In *Knox*, the Ninth Circuit held that where a plaintiff "does not allege a system or practice of discrimination, the only way she [or he] can hope to show a continuing violation is to 'state facts sufficient . . . [to] support[] a determination that the alleged discriminatory acts are related closely enough to constitute a continuing violation, and that one or more of the acts falls within the limitations period." *Id.* (quoting *DeGrassi v. City of Glendora*, 207 F.3d 636, 645

(9th Cir. 2000)).² *See also Knox*, 260 F.3d at 1014 (9th Cir. 2001) (quoting *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir. 1994) ("'[T]he purpose of permitting a plaintiff to maintain a cause of action on the continuing violation theory is to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred.'")).

Courts applying the doctrine in the context of Section 1983 cases explain, however, that "'the statute of limitations runs separately from *each* discrete act,' and 'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" *Kamar v. Krolczyk*, 2008 WL 696929, at *5 (E.D. Cal. Mar. 13, 2008) (quoting *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002) (emphasis *Kamar*) (some citations omitted)). With this framework in mind, the Court turns to the application of the continuing violation theory in the context of Long's Section 1983 claim against Makua.

### B. The Continuing Violation Doctrine Does Not Apply To The Discrete Acts Alleged Against ACO Makua And Others

Long agrees that the events underlying Count I are subject to a two-year statute of limitations and occurred more than two years before he filed his

---

²After *Knox* was decided, the Supreme Court invalidated the "related acts" method of establishing a continuing violation, stating that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Complaint. He contends, however, that the continuing violation doctrine should apply to render Count I timely. That doctrine is applicable only in narrow circumstances and Long's claims against Makua, as currently alleged, do not fall within its confines.

Because "the statute of limitations runs separately from each discrete act," *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002), any claim based on a discrete act is untimely unless that discrete act—or discrete failure to act—took place within the limitations period. *Morgan*, 536 U.S. at 113. One of the only viable pathways to maintaining a cause of action for past acts occurring outside the statute of limitations period is where a plaintiff's claims are based, not on discrete acts, but rather on "a series of separate acts that collectively constitute one unlawful practice." *RK Ventures, Inc.*, 307 F.3d at 1061 n.13 (internal quotation marks and alteration omitted).

In *Pouncil v. Tilton*, in which a Muslim state prisoner alleged a First Amendment violation against prison officials under Section 1983, the Ninth Circuit explained that "a court must determine whether a claim is based on an independently wrongful, discrete act, and if it is, then the claim accrues, and the statute of limitations begins to run, from the date of that discrete act, even if there was a prior, related past act." *Pouncil v. Tilton*, 704 F.3d 568, 578–79 (9th Cir. 2012) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002));

*see also Carpinteria Valley Farms, Ltd. v. Cty. of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003) ("Although *Morgan* was a Title VII case, and the present case is a § 1983 action, we have applied *Morgan* to bar § 1983 claims predicated on discrete time-barred acts, not-withstanding that those acts are related to timely-filed claims."). The court in *Pouncil* reasoned that, where the heart of the claim "does not stem from the policy," but rather from the individualized decisions that resulted from implementation of a policy," then these "individualized decisions are best characterized as discrete acts, rather than as a pattern or practice of discrimination." *Pouncil*, 704 F.3d at 579 (citing *Cherosky v. Henderson*, 330 F. 3d 1243, 1247 (9th Cir. 2003)). Thus, the Court's analysis turns on whether Long alleges discrete acts that are separately actionable.

Under the Ninth Circuit's formulation, derived from *Morgan* and applied in the context of prisoner Section 1983 claims, each time Long's request for a suitable meal was denied by an individual ACO, "an independently wrongful, discrete act occur[red], a claim accrues, and the limitations period begins to run." *Pouncil*, 704 F.3d at 579 (citing *Cherosky* and *Morgan*). That is, as was the case in *Pouncil*, the "heart" of Long's claims "does not stem from [a] policy regarding the [denial of appropriate meals during Ramadan], but rather from the individualized decisions," by the Defendant ACOs. *Pouncil*, 704 F.3d at 781 (internal citation and quotations omitted); *see also Del Rosario v. Saade*, 2015 WL 4404864, at *3

(D. Idaho July 17, 2015) (finding the continuing violation doctrine inapplicable where prisoner alleged that a number of medical treatment decisions, "each of which constitutes a discrete act—a choice of how to address, or not to address, Plaintiff's pain or other serious medical needs[,] cannot reasonably be considered a collective unlawful practice to which the continuing violation doctrine might apply").[3]

Although Long argues that the claims against Makua arising from Ramadan in 2013 are "related acts" to those occurring during Ramadan in 2014, these violations are not a series of acts that together amount to a single pattern or practice. Nor are "acts related to timely-filed claims," without more, sufficient to invoke the continuing violation doctrine. *See Carpinteria Valley Farms*, 344 F.3d at 829 (The Ninth Circuit has "applied *Morgan* to bar § 1983 claims predicated on discrete time-barred acts, not-withstanding that those acts are related to timely-filed claims.").

In short, Long's claims against Makua are based upon discrete acts occurring on July 15, 2013, which are actionable on their own, rather than "a series of separate acts that collectively constitute one unlawful practice." *RK Ventures, Inc.*, 307 F.3d at 1061. Long does not allege any systemic violation of his First

---

[3]The district court in *Del Rosario* reasoned that "[e]ach time a prison medical provider makes a discrete decision on how to treat an inmate going forward—whether to continue the current course of treatment or to try something different—that medical provider engages in a discrete action, triggering a new statute of limitations period." 2015 WL 4404864, at *5.

Amendment rights or that OCCC did not have in place policies to protect those rights.  Nor does he presently allege any concerted action or conspiracy on the part of the individual ACOs to violate his rights.  *See, e.g., Dowling v. Arpaio*, 2011 WL 843942, at *7–*9 (D. Ariz. Mar. 8, 2011) (applying the "last overt act" doctrine to the accrual of civil conspiracies for limitations purposes, and holding with respect to Section 1983 claims, that "Plaintiffs set forth sufficient facts to demonstrate that Defendants' allegedly discriminatory or overt acts related closely enough to constitute a continuing violation, and that one or more of these acts falls within the two-year statute of limitations period"); *Allen v. Iranon*, 99 F. Supp. 2d 1216, 1238–39 (1999) (finding that the continuing violation doctrine applied to plaintiff's Section 1983 claims against state prison administrators because a "systemic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period," and concluding that "the Defendants positively or tacitly came to a mutual understanding among themselves to harass [plaintiff in order to] retaliate against [him] for exercising his Constitutional right to free speech").  *Cf.* Pl.'s Mem. in Opp'n at 7, Dkt. No 59 (The SAC "supports the inference that all of these acts are related and part of organized, ongoing actions by the guards to deny Mr. Long's religious meal requirements.").

Assuming the truth of the allegations in the SAC, Long does not plead facts to support application of the continuing violation theory with respect to Count I. Because the claim, as currently alleged, does not show a continuing violation, Long's Section 1983 claim against Makua is dismissed.

## II. Long Is Granted Leave To Amend

Although the Court dismisses Count I, because amendment of the claim and party dismissed by this Order may be possible, Long is granted leave to amend to address the pleading deficiencies identified herein, by no later than December 22, 2017. Should he choose to amend the dismissed cause of action, Long must allege additional facts as to each element required to state a timely claim. The Court cautions Long to carefully consider whether he can allege facts stating a cognizable claim in any amended complaint he considers filing with this Court.

///

///

///

## CONCLUSION

For the foregoing reasons, Makua's Motion to Dismiss Count I is GRANTED. Long is granted leave to file an amended complaint to attempt to cure the deficiencies noted in this Order by December 22, 2017.

IT IS SO ORDERED.

DATED: November 15, 2017 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Long v. Makua, et al.*, Civil No. 16-00372 DKW-RLP; **ORDER GRANTING DEFENDANT ANDREW MAKUA'S MOTION TO DISMISS COUNT I WITH LEAVE TO AMEND**